**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) |
| **WILLIAM HARRY FRYAR,** | ) Case No. 1:16-bk-13559-SDR |
| | ) |
| Debtor. | ) Chapter 11 |

**OBJECTION OF UNITED STATES TRUSTEE TO WILLIAM HARRY FRYAR'S
AMENDED DISCLOSURE STATEMENT, DATED APRIL 13, 2018**

COMES NOW Acting United States Trustee Paul A. Randolph as a party in interest, by and through his undersigned attorney, and objects to *William Harry Fryar's Amended Disclosure Statement, Dated April 13, 2018* (Doc. 200; the "Disclosure Statement").

The United States Trustee objects to the Disclosure Statement because it: (1) fails to accurately list all assets and claims, (2) needs to address the § 1111(b) election of Bayview Loan Servicing, (3) lacks a complete liquidation analysis, (4) continues to lack detailed financial figures for a feasibility analysis, (5) conflicts with the Plan on class treatment and the entry of the discharge, and (6) contains other errors.

For these reasons, described in detail below, the United States Trustee objects approval of the Disclosure Statement.

### I. BACKGROUND

Following the objections of the United States Trustee and numerous creditors to the original Disclosure Statement, the Debtor filed the Amended Disclosure Statement. While the current Disclosure Statement resolves several of the prior objections raised by the United States Trustee, problems still remain.

Together, the Disclosure Statement and Plan propose three separate distributions. First, $100,000 of cash will be distributed to pay statutory fees and professional fees, with the remaining funds being used to purchase a truck and welder, along with other business purchases. Second, $200,000 of cash will be distributed to tax claims ($95,076) and one secured claim ($20,000), with the remainder ($84,924) going to the unsecured class. Third, the Debtor would pay $1,000 per month until $150,000 has been paid out to the unsecured creditor class. Debtor would then retain ownership of all business and personal assets, including three properties.

After the Disclosure Statement was filed, secured creditor Bayview Loan Servicing exercised its right to make an 1111(b) election. Neither the Disclosure Statement nor the Amended Plan had addressed this contingency.

## II.   DISCLOSURE STATEMENT OBJECTIONS

The United States Trustee objects to the adequacy of the Disclosure Statement.

### a.   STANDARDS

Post-petition solicitations of votes on bankruptcy plans are conditioned on the court's determination that a contemporaneously filed disclosure statement contains "adequate information." 11 U.S.C. § 1125(b); Fed. R. Civ. P. 3016(b). The term "adequate information" is voluminously defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the

complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a).

More succinctly, "a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization." *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990). Regularly considered factors are numerous, *see, e.g., In re Scioto Valley Mortg. Co.*, 88 B.R. 168 (Bankr. S.D. Ohio 1988) (listing 19 factors), but are variable and can be truncated based on the circumstances of the case, *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("It is . . . well understood that certain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case."). Ultimately, "[t]he determination of whether a disclosure statement provides creditors with adequate information is left essentially to the judicial discretion of the court and . . . the information required will necessarily be governed by the circumstances of the case." *In re Commonwealth Group-Mocksville Partners, L.P.*, No. 12-34319, 2013 WL 1728056, at *2 (Bankr. E.D. Tenn. Apr. 22, 2013) (citations and quotations omitted).

This case is relatively small, so the requirements for the disclosure statement are reduced. Nevertheless, the detail provided must still meet the basic standard of affording a hypothetical investor sufficient information to reach an informed decision regarding the plan. In this case, the United States Trustee has identified multiple areas where further information is needed in order to ensure that the creditors have adequate information.

### b. ASSET & LIABILITY FIGURES

While the Debtor's asset and liability disclosures are substantially improved from the prior Disclosure Statement, multiple problems remain.

First, the Disclosure Statement references claims filed in the BBCO bankruptcy

(Disclosure Statement at 4); however, the SmartBank claim in that case has been amended and additional claims have been filed. Accordingly, the figures in the Disclosure Statement should be updated accordingly. The effect of the pending sale motion in the BBCO case should also be addressed, including its impact on the amount of SmartBank's claim in this case (if any).

Second, the Debtor's claim figures remain confusing. First, regarding the tax claims, several of the amounts listed for payment on page 6 of the Disclosure Statement differ significantly from the claims of record. For example, the City of Chattanooga's estimated claim is $1,000 (Disclosure Statement at 6), although the current proof of claim is for $19,766.81 (Claim 5-1). Conversely, the Hamilton County Trustee debt estimate appears higher than the scheduled claims, in light of the numerous claims withdrawals. To the extent the debt reductions occurred due to prior property sales, the discrepancy is understandable. However, the reason for the difference should be explained in the Disclosure Statement, since any additional payments due to the taxing authorities will directly (and perhaps substantially) reduce the unsecured creditors' share of the initial $200,000 distribution.

Second, regarding the unsecured claims, the United States Trustee previously objected that it was unable to determine how the figure of $651,222 was reached for the unsecured class. Now the Disclosure Statement puts the figure at an equally mysterious $564,308. (Disclosure Statement, Exhibit C.) However, the Debtor's three largest unsecured creditors alone have unsecured claims totaling $858,017.03 (See Claim 1-1 at $234,234.71, Claim 3-2 at $349,614.68, and Claim 24-3 at $274,167.64 for unsecured portion.). In light of these problems, the Debtor needs to specifically set out the creditors and claim amounts included in the unsecured class. Such figures are necessary for creditors to determine what their likely pro rata distribution will be, something the Disclosure Statement and Plan fail to adequately explain. Given the limited number

of creditors in this case (26 scheduled unsecured claims and 30 proofs of claim), such figures should be relatively easy to set forth.

### c.  REVISIONS TO ADDRESS § 1111(B) ELECTION

Neither the Disclosure Statement nor the Plan has any contingencies dealing with a § 1111(b) election.  Now that such an election has been made, amendments will be required.  In particular, the Debtor will need to specify any additional payments proposed for the secured creditor and whether such payments (if any) will impact unsecured creditor distributions.  *See Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs., LLC (In re Brice Rd. Devs., LLC)*, 392 B.R. 274, 284-88 (BAP 6th Cir. 2008) (requiring, in addition to the usual cramdown requirements of lien retention and payments equaling the present value of the collateral, the payment of a sum equal to the allowed claim amount).  Additionally, the Debtor's unsecured claims figures should be different based on the exclusion of Bayview Loan Servicing's unsecured claim.

### d.  LACK OF COMPLETE LIQUIDATION ANALYSIS

The Disclosure Statement has a liquidation analysis attached as Exhibit C.  However, the analysis is only partial.  It shows that unsecured creditors would receive 68% in a Chapter 7 liquidation, based on the calculations provided for post-liquidation assets.  However, the analysis then posits, without any supporting calculations, that unsecured creditors will receive a 78% distribution in the Chapter 11.  Such analysis appears incorrect.  The unsecured creditors are slated only to receive the remnants of the $200,000 distribution (at most, $84,924) plus a monthly stream of $1000 payments for 150 months (a present value of $112,951.56 when using the current prime rate of 4.75% for the discount, even without any risk adjustment).  Taking the payment stream at the face value of $150,000, this would only total $234,924; that is a 41.6% distribution (based on the Debtor's numbers) and far less than the listed 78% distribution.  Reducing the stream of

5

payments to present value, the distribution rate drops to 35%. In essence, by proceeding with this plan rather than converting to Chapter 7, the creditors are receiving $150,581 less at face value and $187,629.44 less at present values.

Additionally, in light of the § 1111(b) election, a new liquidation analysis will be necessary. In particular, the higher cramdown payments required to be made to the electing creditor will likely impact the payments to the unsecured class while simultaneously reducing the size of the unsecured claims pool (but only in the Chapter 11). These changes will need to be factored into the analysis for an accurate comparison of a Chapter 7 liquidation versus a Chapter 11 reorganization with a § 1111(b) election.

In any event, an amended liquidation analysis will inevitably demonstrate that unsecured general creditors will do better in Chapter 7. The Plan proposes nominal distributions of $234,924 or roughly $197,875.56 at present value, even at a prime rate discount without risk adjustment. In contrast, a Chapter 7 trustee could immediately disburse the $278,173 in cash. After paying the initial Chapter 7 trustee commission[1] ($17,158.65), the estimated Chapter 11 administrative expenses ($16,167 according to the Debtor's liquidation analysis), the priority claims ($6181 according to the Debtor's analysis), and the IRS secured debt ($88,895), the unsecured creditors would immediately receive $149,771.40 (as opposed to $84,924 under the Plan); plus, the trustee would still have the Yearwood property (now without the IRS lien and valued at $150,000) and BBCO rights (estimated at $40,000) for later distribution, as well as the two other properties, the lease payment rights, and the other non-exempt personal property.

---

[1] The Debtor's liquidation analysis does not include any Chapter 7 expenses.

### e. FEASIBILITY/LACK OF FINANCIAL FIGURES

Aside from a single monthly operating report (and that from December 2017), the Debtor gives no financial performance figures. This is insufficient. The Debtor proposes to pay $1000 per month to his creditors, yet provides insufficient historical information to permit a feasibility assessment. Further, financial projections are also needed to inform creditors regarding other confirmation requirements, including the good faith of the debtor under 11 U.S.C. § 1129(a)(3). Since this Debtor has been in bankruptcy almost constantly since April 2015, these numbers should not be difficult to collect in a spreadsheet showing income and expenses over time. And, at the very least, the Debtor should have attached a <u>current</u> monthly operating report.

### f. CONFLICTS WITH PLAN

The Disclosure Statement also conflicts with the Amended Plan. In particular, the proposed treatment for Smart Bank in the Disclosure Statement at page 7 (value of $29,500 for 6361 Harrison Ooltewah Road) differs markedly from the proposed treatment under the Plan at page 6 (payments from BBCO, LLC on Signal Mountain Road Property). Additionally, in contrast with the Disclosure Statement, the Plan inappropriately grants a discharge on the effective date subject to exceptions. (Plan at 8.) Since this is an individual case, the language should be simplified to clearly state that no discharge will be entered except in accordance with § 1141(d)(5) upon later motion and order. Similar modifications are needed for Plan ¶¶ 11.3 and 11.5 (Plan at 9.)

### g. OTHER ISSUES

The Disclosure Statement and Plan also contain other errors, including erroneous internal references and internally conflicting statements. *Compare, e.g.,* Disc. Stat. at 7-8 *with* Disc. Stat. at 10 (listing different classes as impaired or unimpaired and including non-existent class

references). These matters can, presumably, be resolved by agreement with the Debtor and are not detailed here.

Additionally, the re-opening fee is improperly waived for all purposes, rather than merely for reopening for entry of a discharge. (Plan at 10.)

### III.  CONCLUSION

**WHEREFORE**, for the above reasons, the United States Trustee respectfully requests that the Court DENY approval of the Disclosure Statement.

> Respectfully submitted,
>
> PAUL A. RANDOLPH
> ACTING UNITED STATES TRUSTEE, REGION 8
>
> /s/ David Holesinger
> David Holesinger
> Trial Attorney, TN BPR 030189
> U.S. Department of Justice
> Office of the U.S. Trustee
> 31 East 11th Street, 4th Floor
> Chattanooga, TN 37402
> (423) 752-5153

## Certificate of Service

I hereby certify that on May 18, 2018, a copy of the foregoing Objection of United States Trustee to William Harry Fryar's Amended Disclosure Statement, Dated April 13, 2018, was electronically filed in the captioned matter and served by Notice of Electronic Filing on parties receiving such notice and was sent by first class U.S. Mail, postage paid, to:

William Harry Fryar
2309 Corral Trail
Chattanooga, TN 37421

/s/ David Holesinger