**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | |
| **WILLIAM HARRY FRYAR,** ) | Case No. 1:16-bk-13559-SDR |
| ) | |
| **Debtor.** ) | Chapter 11 |

**OBJECTION OF UNITED STATES TRUSTEE TO WILLIAM HARRY FRYAR'S
SECOND AMENDED DISCLOSURE STATEMENT, DATED JUNE 18, 2018**

COMES NOW Acting United States Trustee Paul A. Randolph as a party in interest, by and through his undersigned attorney, and objects to *William Harry Fryar's Second Amended Disclosure Statement, Dated June 18, 2018* (Doc. 235; the "Disclosure Statement").

The United States Trustee objects to the Disclosure Statement because it: (1) fails to address the § 1111(b) election of Bayview Loan Servicing, (2) lacks an accurate liquidation analysis (and, after corrections, demonstrates that the best interest test is not satisfied), (3) continues to lack detailed financial figures for a feasibility analysis, and (4) contains other errors.

For these reasons, described in detail below, the United States Trustee objects to approval of the Disclosure Statement.

**I.    BACKGROUND**

Following the objections to the original and amended Disclosure Statements, the Debtor filed the current Disclosure Statement. Problems repeatedly identified by the United States Trustee continue to persist in this Disclosure Statement.

The Disclosure Statement and Plan propose three separate distributions. First, $100,000 of cash will be distributed to pay statutory fees and professional fees, with the remaining funds

1

being used to purchase a truck and welder, along with other business purchases, for the benefit of the Debtor.  Second, $200,000 of cash will be distributed to tax claims ($95,076) and one secured claim ($20,000), with the remainder (estimated at $84,924) going to the unsecured class[1].  Third, the Debtor would pay $1,000 per month until $200,000 has been paid out to the unsecured creditor class.  Debtor would then retain ownership of all business and personal assets, including three properties.

After an earlier disclosure statement was filed, secured creditor Bayview Loan Servicing exercised its right to make an 1111(b) election.  Neither the Disclosure Statement nor the current Plan have addressed this contingency, although the failure to address this contingency was part of the United States Trustee's prior objection.

## II.    DISCLOSURE STATEMENT OBJECTIONS

The United States Trustee objects to the adequacy of the Disclosure Statement.

### a.    STANDARDS

Post-petition solicitations of votes on bankruptcy plans are conditioned on the court's determination that a contemporaneously filed disclosure statement contains "adequate information."  11 U.S.C. § 1125(b); Fed. R. Civ. P. 3016(b). The term "adequate information" is voluminously defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the

---

[1] Up to $40,000 in funds from the BBCO Chapter 7 case will also be distributed, though subsequent developments in that case suggest the figure will be smaller (probably much smaller).

complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a).

More succinctly, "a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization." *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990). Regularly considered factors are numerous, *see, e.g., In re Scioto Valley Mortg. Co.*, 88 B.R. 168 (Bankr. S.D. Ohio 1988) (listing 19 factors), but are variable and can be truncated based on the circumstances of the case, *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("It is . . . well understood that certain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case."). Ultimately, "[t]he determination of whether a disclosure statement provides creditors with adequate information is left essentially to the judicial discretion of the court and . . . the information required will necessarily be governed by the circumstances of the case." *In re Commonwealth Group-Mocksville Partners, L.P.*, No. 12-34319, 2013 WL 1728056, at *2 (Bankr. E.D. Tenn. Apr. 22, 2013) (citations and quotations omitted).

This case is relatively small, so the requirements for the disclosure statement are reduced. Nevertheless, the detail provided must still meet the basic standard of affording a hypothetical investor sufficient information to reach an informed decision regarding the plan. In this case, the United States Trustee has identified multiple areas where further information is needed in order to ensure that the creditors have adequate information.

### b. ASSET & LIABILITY FIGURES

The United States Trustee objected to the original Disclosure Statement because it was unclear how the figure of $651,222 was reached for the total amount of unsecured claims. The Amended Disclosure Statement put the figure at an equally mysterious $564,308. The Second

3

Amended Disclosure Statement, Exhibit C, now estimates the number at $349,515 (if Bayview's claim is bifurcated in a Chapter 7). Again, the United States Trustee objects to the lack of basis for this number, which is inconsistent with the Claims Register. Indeed, a single claim is higher than that total: Claim 3-2 for $349,614.68. In light of these problems, the Debtor needs to specifically set out the creditors and claim amounts included in the unsecured class. Such figures are necessary for creditors to determine what their likely pro rata distribution will be, something the Disclosure Statement and Plan fail to adequately explain. Given the limited number of creditors in this case (26 scheduled unsecured claims and 30 proofs of claim), such figures should be relatively easy to set forth.

### c. REVISIONS TO ADDRESS § 1111(B) ELECTION

Neither the Disclosure Statement nor the Plan has any contingencies dealing with a § 1111(b) election. In particular, the Debtor will need to specify any additional payments proposed for the secured creditor and whether such payments (if any) will impact unsecured creditor distributions. *See Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs., LLC (In re Brice Rd. Devs., LLC)*, 392 B.R. 274, 284-88 (BAP 6th Cir. 2008) (requiring, in addition to the usual cramdown requirements of lien retention and payments equaling the present value of the collateral, the payment of a sum equal to the allowed claim amount). Although the United States Trustee previously raised this issue, the Disclosure Statement continues to treat Bayview's claim as a regular, bifurcated secured claim rather than an 1111(b) claim.

### d. LACK OF COMPLETE AND ACCURATE LIQUIDATION ANALYSIS

The Disclosure Statement has a liquidation analysis attached as Exhibit C. However, the analysis is confusing and incomplete. It purports to show that unsecured creditors would receive 69% in a Chapter 7 liquidation, based on the calculations provided for post-liquidation assets, but

82% under the Plan.  However, the origin of the 69% figure is unclear and the 82% figure (funds available for distribution in the Chapter 7 divided by the estimated amount of allowed general unsecured claims) is actually the Chapter 7 recovery.

The recovery under the Chapter 11 plan (using the Exhibit C liability figures) is much lower.  First, the unsecured creditors are slated only to receive the remnants of the $200,000 distribution.  Based on the Disclosure Statement and Exhibit C, that would occur as follows[2]:

|  | Amount | Balance |
|---|---|---|
| Initial | $200,000 | $200,000 |
| Hamilton County | $ 7,477.00 | $192,523 |
| Chattanooga | $19,767.00 | $172,756 |
| IRS | $88,895.00 | $83,861 |
| Cornerstone | $30,581.00 | $53,280 |
| Bayview (Plan) | $20,000.00 | $33,280 |

Thus, the general unsecured class would only receive $33,280, a far lower benefit than that received by the Debtor himself (who is benefiting through the removal of a lien worth $88,895 and also using bulk of the remaining cash to buy himself a truck, a welder, and various other items totaling $66,500).  The general unsecured creditors would also receive $1,000 per month until an additional $200,000 is paid out.  However, since the Chapter 7 distribution would be immediate, the $200,000 payout over time must be discounted to present value.  Using the current prime rate

---

[2] The Chapter 11 Plan does not actually propose to pay Cornerstone from the $200,000 but assumes that Cornerstone's claim will be paid down through other means (which appears to have been accomplished through the sale of property in the BBCO case).  However, the Chapter 7 liquidation analysis does not make this same assumption.  Accordingly, for the sake of consistency, the above analysis includes a payment to Cornerstone.  Had it been removed, the immediate unsecured creditor payout would be increased by $30,581 in the Chapter 11; in the Chapter 7, the ultimate funds available for distribution to unsecured creditors would increase by the same amount.  Accordingly, the inclusion or exclusion of this figure should have no significant effect; it would increase the Chapter 11 distribution to 57% but correspondingly increase the Chapter 7 distribution to 91%.

of 5%[3] and assuming a $1,000 per month payment for over 16 years, that value would be roughly $135,515.69. Adding in the prior $33,280, the unsecured creditors would receive a present value of $168,795.69. Dividing this number into the total unsecured claim figure ($349,515 from Exhibit C) yields a dividend of 48%. In essence, by proceeding with this plan rather than converting to Chapter 7, the general unsecured creditors are receiving 48% of their claims rather than 82% of their claims, for a present value loss of $118,538.31 (present value of plan distribution of $168,795.69 minus $287,334 from Exhibit C)

Further, the Chapter 11 dividend is probably even lower for two reasons. First, the above analysis does not incorporate any risk adjustment, even though a large risk adjustment is likely warranted (as discussed in the feasibility section below). Even a 3% risk premium would drop the present value of the income stream by over $25,000. Second, in light of the § 1111(b) election, the Debtor will need to pay Bayview the present value of its security interest in the collateral plus an amount (likely via a stream of payments) equaling the face value of their claim. This would likely reduce the $2000 monthly payments to unsecured creditors or, if not, it would further increase the default risk adjustment for all streams of payments.[4] In a Chapter 7, neither risk adjustments for payment streams nor § 1111(b) elections will be factors.

To even equal (without risk adjustment), the present value of the Chapter 7 distribution of $287,334, the Debtor would need to add to the immediate $33,280 disbursement payments of $2,695 per month for 10 years. And, again, with even a modest risk adjustment of 3%, that monthly payment figure exceeds $3000. But, as discussed below, even the current $1,000 per month proposal is not feasible.

---

[3] This does not include a risk adjustment though, as discussed below, a significant risk adjustment for default is likely to be needed and would push the present value significantly lower.

[4] This risk is somewhat factored in by including Bayview's claim in the above analysis as if it were bifurcated.

6

e. **FEASIBILITY/LACK OF FINANCIAL FIGURES**

Aside from a single monthly operating report, the Debtor gives no financial performance figures. This is insufficient. The Debtor proposes to pay $1000 per month to his creditors, yet provides insufficient historical information to permit a feasibility assessment. Further, financial projections are also needed to inform creditors regarding other confirmation requirements, including the good faith of the debtor under 11 U.S.C. § 1129(a)(3). Since this Debtor has been in bankruptcy almost constantly since April 2015, these numbers should not be difficult to collect in a spreadsheet showing income and expenses over time. From the United States Trustee's review, the monthly operating reports in this case show the following:

| Period | Real Estate Inc. | Constr. | Other | T. Income | Expenses | Income/Loss |
|---|---|---|---|---|---|---|
| Sep-16 | $ 2,450.00 | $ 1,190.00 | $ 65.00 | $ 3,705.00 | $ 3,174.36 | $ 530.64 |
| Oct-16 | $ 2,450.00 | $ 4,020.00 | $ - | $ 6,470.00 | $ 4,470.07 | $ 1,999.93 |
| Nov-16 | $ 2,450.00 | $ 1,000.00 | $ - | $ 3,450.00 | $ 5,406.13 | $ (1,956.13) |
| Dec-16 | $ 2,450.00 | $ 2,300.00 | $ - | $ 4,750.00 | $ 4,566.97 | $ 183.03 |
| Jan-17 | $ 2,450.00 | $ 2,400.00 | $ - | $ 4,850.00 | $ 4,778.99 | $ 71.01 |
| Feb-17 | $ 2,450.00 | $ 250.00 | $ - | $ 2,700.00 | $ 3,154.21 | $ (454.21) |
| Mar-17 | $ 3,250.00 | $ 1,825.00 | $ - | $ 5,075.00 | $ 4,483.07 | $ 591.93 |
| Apr-17 | $ 3,250.00 | $ 610.00 | $ - | $ 3,860.00 | $ 4,404.64 | $ (544.64) |
| May-17 | $ 3,250.00 | $ 2,177.00 | $ - | $ 5,427.00 | $ 4,725.00 | $ 702.00 |
| Jun-17 | $ 3,250.00 | $ 200.00 | $ - | $ 3,450.00 | $ 5,221.76 | $ (1,771.76) |
| Jul-17 | $ 2,350.00 | $ 2,700.00 | $ - | $ 5,050.00 | $ 3,926.89 | $ 1,123.11 |
| Aug-17 | $ 2,495.00 | $ 4,472.92 | $ - | $ 6,967.92 | $ 8,331.97 | $ (1,364.05) |
| Sep-17 | $ 997.50 | $ 900.00 | $ - | $ 1,897.50 | $ 2,967.19 | $ (1,069.69) |
| Oct-17 | $ 945.00 | $ 3,850.00 | $ - | $ 4,795.00 | $ 4,048.60 | $ 746.40 |
| Nov-17 | $ 5,945.00 | $ 3,000.00 | $ - | $ 8,945.00 | $ 3,864.06 | $ 5,080.94 |
| Dec-17 | $ 2,945.00 | $ 3,000.00 | $ - | $ 5,945.00 | $ 7,966.26 | $ (2,021.26) |
| Jan-18 | $ 2,250.00 | $ 3,607.50 | $ - | $ 5,857.50 | $ 4,345.60 | $ 1,511.90 |
| Feb-18 | $ 2,940.00 | $ 2,250.00 | $ - | $ 5,190.00 | $ 8,406.77 | $ (3,216.77) |
| Mar-18 | $ 945.00 | $ 3,475.00 | $ - | $ 4,420.00 | $ 5,194.78 | $ (774.78) |
| Apr-18 | $ 1,945.00 | $ 3,130.00 | $ - | $ 5,075.00 | $ 4,361.13 | $ 713.87 |
| May-18 | $ 1,945.00 | $ 3,120.79 | $ - | $ 5,065.79 | $ 6,943.14 | $ (1,877.35) |
| TOTAL | $ 53,402.50 | $ 49,478.21 | $ 65.00 | $ 102,945.71 | $ 104,741.59 | $ (1,795.88) |
| | | | | | AVERAGE | $ (85.52) |

In other words, Debtor has a filing-to-date loss of $1,795.88, with an average monthly loss of $85.52. The Debtor has only exceeded $1,000 of net income in a month four times, and at least

one of those (November 2017) was likely skewed upwards because of low real estate income for the preceding two months. In contrast, the Debtor has suffered a loss in excess of $1000 during eight different months. In short, the United States Trustee is concerned that the Debtor's financial performance is being excluded from the Disclosure Statement because it demonstrates a complete lack of feasibility for an additional $1,000 per month payment (let alone additional § 1111(b) payments or the payments necessary to provide a benefit exceeding that available to creditors under an immediate Chapter 7 liquidation).

### f. ERRORS

The Disclosure Statement also contains multiple other errors:

- Page 1: Incorrect reference to pages 3-7 (rather than pages 5-9) for the proposed distributions

- Page 1: Stating that general unsecured creditors "are classified in Class 3.1" rather than Class 4.5

- Page 8: Inclusion of Class 4.4 even though there is no such collateral or related secured claim at this point

- Page 9: "an additional one hundred fifty-thousand ($200,000) dollars"

- Page 10: "Proponent believes that classes 4.3, 4.4, 4.5, and 4.6 are impaired." However, 4.3 is listed above as "not impaired" (incorrectly) and 4.4 should not be a class at all. Similarly, 4.1 and 4.2 are described as unimpaired but there does not appear to be a Class 4.1 and Class 4.2 is listed as being impaired on page 7.

The Plan also still contains confusing and contradictory statements regarding the discharge. *See* Plan at 8-9 ("On the confirmation date of this Plan, the debtor will not be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to

the extent specified in § 11141(d)(1)(A) of the Code, except that the Debtor will not be discharged from any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(5) or (d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B)."); Plan at 9 ("In addition, the distributions provided for under this Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against the Debtor or any of its assets or properties, including any Claim accruing after the Petition Date and prior to the Effective Date.").  These provisions should be replaced with the simple, clear, and accurate language from Official Form 25A:

> Discharge.  Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

These changes are necessary to make the Disclosure Statement and Plan internally consistent and complaint with the Code.

### III.  CONCLUSION

**WHEREFORE**, for the above reasons, the United States Trustee respectfully requests that the Court DENY approval of the Disclosure Statement.

    Respectfully submitted,

    PAUL A. RANDOLPH
    ACTING UNITED STATES TRUSTEE, REGION 8

<u>/s/ David Holesinger</u>
David Holesinger
Trial Attorney, TN BPR 030189
U.S. Department of Justice
Office of the U.S. Trustee
31 East 11th Street, 4th Floor
Chattanooga, TN 37402
(423) 752-5153

## Certificate of Service

      I hereby certify that on July 18, 2018, a copy of the foregoing Objection of United States Trustee to William Harry Fryar's Second Amended Disclosure Statement, Dated June 18, 2018, was electronically filed in the captioned matter and served by Notice of Electronic Filing on parties receiving such notice and was sent by first class U.S. Mail, postage paid, to:

William Harry Fryar
2309 Corral Trail
Chattanooga, TN 37421

                                      /s/ David Holesinger