United States Bankruptcy Court
Eastern District of Tennessee

In re     William Harry Fryar                                   Case No.    1:16-bk-13559 SDR
                    Debtor                                                Chapter        11

## WILLIAM HARRY FRYAR'S FORTH AMENDED PLAN OF REORGANIZATION, DATED OCTOBER 12, 2018

### SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of William Harry Fryar (the "Debtor") from the sale of Debtor's interest in WLF and LF corporations and through monthly payments after confirmed.

This Plan provides for three classes of secured claims; one class of unsecured claims; and one class of equity security holders. Unsecured creditors holding allowed claims will receive a pro rata distribution. This Plan also provides for the payment of administrative and priority claims as the claims of Department of the Treasury, Hamilton County Trustee and City of Chattanooga, and Debtor's attorney fees estimated to be $10,000, more or less.

All creditors and equity security holders should refer to Articles III through IV of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

### ARTICLE I
### DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in initially capitalized form in this Plan that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code.

1.1    "Administrative Claim" means a Claim for a cost or expense of administration of the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(1) of the Bankruptcy Code, including: (a) the actual, necessary costs and expenses incurred after the commencement of the Chapter 11 Case of preserving the Estate and operating the businesses of the Debtor; (b) wages, salaries or commissions for services; (c) reimbursement of expenses awarded under Sections 330(a) or 331 of the Code; and (d) all fees and charges assessed against the Estate of the Debtor under Chapter 123 of Title 28 of the United States Code.

1.2    "Allowed Amount" means the amount in lawful currency of the United States of any Allowed Claim.

1.3    "Allowed Claim" means, with reference to any Claim: (i) a Claim against the Debtor, proof of which, if required, was Filed on or before the Bar Date, which is not a Contested Claim, (ii) if no proof of Claim was so Filed, a Claim against the Debtor that has been or hereafter is listed by the Debtor in his Schedules as liquidated in amount and not disputed or contingent, or (iii) a Claim allowed hereunder or by Final Order. An Allowed Claim does not include any Claim or portion thereof which is a Disallowed Claim or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof, by this Plan, or pursuant to a Final Order. Unless otherwise specifically provided in this Plan, an Allowed Claim shall not include any amount for punitive damages or penalties.

1.4    "Allowed Secured Claim" means an Allowed Claim that is Secured, as hereinafter defined.

1.5 "Ballot" shall mean the forms mailed to holders of Claims for the purpose of voting to accept or reject the Plan.

1.6 "Bankruptcy Code" or "Code" means Title 11 of the United States Code, as amended.

1.7 "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Eastern District of Tennessee, Chattanooga Division.

1.8 "Bar Date" means the date fixed by the Bankruptcy Court by which a proof of claim must have been filed against the Debtor.

1.9 "Business Day" means any day, other than a Saturday, Sunday or legal holiday (as the term is defined in Bankruptcy Rule 9006(a)).

1.10 "Chapter 11 Case" means the above entitled and numbered case filed by the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

1.11 "Claim" means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.12 "Claimant" means a holder of a Claim.

1.13 "Class" means all of the holders of Claims against the Debtor that have been designated as a class in the Plan.

1.14 "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

1.15 "Confirmation Date" means the date of entry by the Court of an order confirming the Plan.

1.16 "Confirmation Hearing" means the hearing or hearings to be held before the Bankruptcy Court in Debtor shall seek Confirmation of this Plan.

1.17 "Confirmation Order" means the Order confirming this Plan, together with any supplements, amendments or modifications thereto.

1.18 "Consummation" means that substantially all payments required to be made under the Plan on the Effective Date have been made.

1.19 "Contested" when used with respect to a Claim, means a Claim against the Debtor that is: (i) listed in the Debtor's Schedules as disputed, contingent or unliquidated and as to which a proof of Claim has been timely Filed; (ii) listed in the Debtor's Schedules as undisputed, liquidated and not contingent and as to which a proof of Claim has been Filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the amount provided for in the Debtor's Schedules; or (iii) the subject of an objection which has been or may be timely Filed and which claim has

2

not been disallowed by Final Order. Nothing contained herein shall prohibit objections to Claims from being filed after entry of the Confirmation Order. To the extent an objection relates to the allowance of only a part of a Claim, such a Claim shall be a Contested Claim only to the extent of the objection.

1.20  "Creditor" means holder of a Claim as of the Petition Date.

1.21  "Debtor" or "Debtor-in-Possession" means William Harry Fryar.

1.22  "Disallowed Claim" means a Claim against the Debtor, or any portion thereof, (i) that has been disallowed by Final Order; including Final Orders entered after entry of the Confirmation Order; (ii) proof of which has been untimely Filed and as to which no Order of allowance has been entered by the Bankruptcy Court; or (iii) listed as disputed, contingent or unliquidated and as to which no proof of claim has been timely Filed.

1.23  "Disclosure Statement" means the Disclosure Statement for this Plan, together with any supplements, amendments or modifications thereto.

1.24  "Distribution" means any payment under the Plan.

1.25  "Distribution Date" means the date specified in the Plan on which payment to any classified or unclassified claimant shall be made. If not specified in the Plan with regard to a Class of Claims, then the Distribution Date shall be the first day of the month following the Effective Date.

1.26  "Effective Date" means (i) the first day of the month following the expiration of thirty (30) days following the date on which the Confirmation Order becomes a Final Order; or (ii) in the event the Confirmation Order is appealed or a motion to reconsider is filed, the thirtieth (30th) day after the entry of a Final Order denying the motion, dismissing such appeal or affirming the Bankruptcy Court's Confirmation Order.

1.27  "Entity" includes any individual, partnership, corporation, estate, trust, governmental unit, person and the United States Trustee.

1.28  "Estate" means the bankruptcy estate of the Debtor created by Section 541 of the Bankruptcy Code upon the commencement of their Chapter 11 Case.

1.29  "Estate Assets" means each and all of the assets included in the Debtor's Estate.

1.30  "Executory Contract" means any contract, including, without limitation, any unexpired lease, to which Debtor is a party and which is capable of being assumed or rejected pursuant to Section 365 of the Bankruptcy Code.

1.31  "Fair Market Value" means the value of the property as indicated in the Disclosure Statement or Plan of Reorganization, which has been determined based on financial analysis. The Fair Market Value is an estimate and is subject to change based on fluctuations of the market and other numerous factors. However, the Fair Market Value of the property as stated in the Disclosure Statement is considered current and believed to be correct for purposes of the Plan.

1.32  "Fee Claim" means a Claim for fees and expense reimbursements under Section 330 or Section 503(b) of the Bankruptcy Code.

1.33  "Filed" means filed with the Bankruptcy Court.

1.34  "Final Order" means: (i) an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing, shall then be pending; or (ii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take

any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the Confirmation Order may be treated as a Final Order at the option of Debtor if no stay pending appeal has been obtained.

    1.35    "General Unsecured Claims" means all Claims in Class 7.

    1.36    "Impaired" means the treatment of an Allowed Claim under this Plan unless, with respect to such Claim, either (i) this Plan leaves unaltered the legal, equitable, and contractual rights to which such Claim entitles the holder of such Claim; or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (A) cure any default that occurred before, on or after the commencement of the Chapter 11 Case other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstate the maturity of such Claim as such maturity existed before such default; (C) compensate the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) do not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim.

    1.37    "Insider Unsecured Claims" means any claim of entities related to the Debtor as defined at 11 U.S.C. 101 (31).

    1.38    "Lender " ( al so "Secured Lender") means any Claimant that holds a Secured Claim or Lien, as defined herein, against the Estate.

    1.39    "Lien" means all valid and enforceable liens, security interests, claims and encumbrances against any property of the Debtor's Estate which is permitted by, or not avoided pursuant to, the Bankruptcy Code.

    1.40    "Order " means an order or judgment of the Bankruptcy Court.

    1.41    "Penalty Unsecured Claims" means any claims of taxing authorities not entitled to priority pursuant to
11 USC § 507(a)(8).

    1.42    "Person" shall have the meaning ascribed to such term under Section 101(41) of the Bankruptcy Code.

    1.43    "Persons Entitled to Notice" means interested parties who have appeared and intervened in the case or are listed in Debtor's schedules.

    1.44    "Petition Date" means August 26, 2016.

    1.45    "Plan" means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein or in accordance with Section 1127 of the Bankruptcy Code.

    1.46    "Plan Documents" means this Plan, the Disclosure Statement and any and all other documents necessary to effectuate this Plan; and all exhibits, attachments, and amendments to any of the foregoing.

    1.47    "Post Confirmation " means the period of time after the Confirmation Date.

    1.48    "Priority Claim" means all Claims entitled to priority under Section 507(a)(1)-(a)(10) of the Bankruptcy Code.

    1.49    "Pro Rata" or "Pro Rata Share" means the proportion that the amount of an Allowed Claim in a particular class bears to the aggregate amount of all Claims in such class, including Contested Claims, but not including Disallowed Claims, as calculated by the Debtor as of a date preceding a Distribution Date.

1.50     "Professional Persons" means a Person retained or to be compensated pursuant to Sections 327, 328, 330, 331, 1102, and 1103 of the Bankruptcy Code.

1.51     "Reorganized Debtor" means the Debtor as reorganized on the Effective Date under the Plan and thereafter.

1.52     "Retained Assets" means all property of the Estate of the Debtor not surrendered during the Chapter 11 case or by the Plan.

1.53     "Schedules" means those schedules and statement of financial affairs filed by the Debtor under Federal Rule of Bankruptcy Procedure 1007, as same may be amended from time to time.

1.54     "Secured Claims" means an Allowed Claim that is secured by a lien on or security interest in property in which the Estate has an interest, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of a Claimant's interest in such Estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be.

1.55     "Secured Lender" ( also "Lender") means any Claimant that holds a Secured Claim or Lien, as defined above, against the Estate.

1.56     "Unsecured" means an Allowed Claim that is not Secured or the unsecured portion of a Secured Claim.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1     Priority Claims. All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

2.2     Class 4.2. The claim of Cornerstone Bank(SmartBank), Claim #24, to the extent allowed as a secured claim under § 506 of the Code.

2.3     Class 4.3. The claim of Bayview Loan Servicing, Claim #25, to the extent allowed as a secured claim under § 506 of the Code.

2.4     Class 4.4. n/a

2.5     Class 4.5. All unsecured claims allowed under § 502 of the Code.

2.6     Class 4.6. The claim of Equity interests of the Debtor.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.1     Unclassified Claims. Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

5

    3.2    <u>Administrative Expense Claims</u>.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

    3.3    <u>Priority Tax Claims</u>.  Each holder of a priority tax claim will be paid consistent with § 1129(a)(9)(C) of the Code in equal monthly payments such that all claims will be paid within 60 months of the petition date.

    3.4    <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

# ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

    4.1    Claims and interests shall be treated as follows under this Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Hamilton County Trustee<br>Attention: Bankruptcy Department<br>625 Georgia Avenue, Room 210<br>Chattanooga, TN 37402<br>(Reduced by sales of property in the case) | $5915 | | Pmt interval = n/a<br>Monthly payment = n/a<br>Begin date = 30 days from Effective Date<br>End Date = n/a<br>Interest Rate % = n/a<br>Est. Total Payout Amount |
| City of Chattanooga<br>101 East 11th St. Ste. 100<br>Chattanooga, TN 37402 | $-0- | | Pmt interval = n/a<br>Monthly payment = n/a<br>Begin date 30 days from Effective Date<br>End date = n/a<br>Interest Rate % = n/a<br>Est. Total Payout Amount = n/a |
| Internal Revenue Service<br>801 Broadway, Room 285 M/S 146, Nashville, TN 37203 | $88,895 | | Pmt interval = n/a<br>Monthly payment = n/a<br>Begin date = 30 days from Effective Date<br>End date = n/a<br>Interest Rate % = n/a<br>Est. Total Payout Amount = n/a |

    E.    Classes of Claims and Equity Interests

6

Plan:

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under

1. *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim, unless the Plan provides for different treatment.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 4.2 | *Secured claim of:*<br>Name = Cornerstone Bank(Smart Bank)<br><br>Collateral Description = real property 6361 Harrison Ooltewah Road<br>Allowed Secured Amount = $ 30,581<br><br>Priority of lien = first<br><br>Principal owed = $30,581<br><br>Pre-pet. arrearage = $ n/a<br><br>Total claim = $30,581 | no | Impaired | Monthly payment = -0-<br><br>Pmts Begin = full payment = within 30 days of the Effective Date<br><br>Pmts End = n/a<br><br>Balloon pmt = n/a<br><br>Interest rate % = n/a<br><br>Treatment of Lien Released |

5

| 4.3 | *Secured claim of:*<br>Name = Bayview Loan Servicing<br>6377 Harrison Ooltewah Road<br>Collateral Description = real estate, etc.<br><br>Allowed Secured Amount = $ 20,000<br><br>Priority of lien = n / a<br><br>Principal owed = $ n / a<br><br>Pre-pet. arrearage = $ n/a<br><br>Total Allowed Claim by Agreement = $47,250 | no | Impaired | Monthly payment = n/a<br><br>Pmts Begin = full payment within 30 days of Effective Date<br><br>Pmts End = n/a<br><br>Balloon pmt = n/a<br><br>Interest rate % = n/a<br><br>Treatment of Lien = Released<br><br>Additional payment required to cure defaults = n/a |
|---|---|---|---|---|

2. Classes of Priority Unsecured Claims

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan: n/a

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| n/a | | | |

7

3. Class of General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 6, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Trea |
|---|---|---|---|
| | | | |

8

| | | | |
|---|---|---|---|
| 4.5 | General Unsecured Class-From $200,000 paid by Debtor, the balance remaining after payment of administrative expenses, priority tax claims, Bayview secured claim of $47,250 and SmartBank claim and the net proceeds from the sale of the Murfreesboro property estimated to be $500,000 more or less will be paid to this Class in full payment of the claims in this class.<br>Nelnet unsecured claim of $240,235 Claim 1, is a student loan debt that is in suspension and will receive no payments under the Plan.<br>The Gentry claim, Claim No. 21 is going to be objected to by the Debtor since the Debtor believes he does not owe that amount of debt. Claim No. 22, the Gammenthaler claim, iswithdrawn through settlement as will be Claim No. 23 filed by BBCO, LLC in the amount of $57,191.<br>SmartBank's claim, Claim No. 24 is estimated to be approximately $30,581.<br>Cordell, Claim No. 30 is going to be objected to as the Debtor does not believe that he owes that debt.<br>That leaves claims remaining in the unsecured class of $448,133_more or less. | Not Impaired | Monthly payment = n/a<br>Pmts Begin = within 30 days of the Effective Date Pmts End = [Balloon pmt]<br><br>= n/a Interest rate % from<br><br>= n/a<br>Estimated percent of claim paid = 100% |
| 4.6 | Unsecured Claim of Nelnet- claim amount of $243,234.71 | Not Impaired | Nelnet will receive no payments through the Plan. This claim results from a student loan and is deferred or under payment suspension. |

4.  *Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder. The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 4.7 | Equity interest holders | impaired | no distribution to retain pre-petition property interests |

# ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

9

  5.2 <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

  5.3 <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

ARTICLE VI
PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

  6.1 <u>Assumed Executory Contracts and Unexpired Leases</u>.

  (a) The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan.

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| Lease with Crosby Blair | Lease of property located at 6377 Harrison-Ooltewah Rd., Harrison, TN 37341 |

  (b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the later of the date of the order confirming this Plan, upon the effective date of this Plan, the date of the entry of the order confirming this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than <u>fifteen</u> (<u>15</u>) days after the date of the order confirming this Plan.

ARTICLE VII
MEANS FOR IMPLEMENTATION OF THE PLAN

  7.1 Pursuant to § 1123(a)(5) of the Code, Debtor's Plan will funded from a cash payment, on or before the Effective Date in the amount of two hundred ($200,000) from the sale of Debtor's interest in WLF & LF to a third party entity and cash from the sale of the Murfreesboro properties of $725,000. It is not anticipated that the Debtors organizational structure will change, although the Debtor reserves the right to do so, if the Debtor determines such is in the interest of the Debtor, and its creditors.

ARTICLE VIII
GENERAL PROVISIONS

  8.1 <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions in Article II.

  8.2 <u>Effective Date of Plan</u>.  The Effective Date of this Plan is the first business day of the month following the date that is thirty (30) days after the entry of the order of confirmation.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

  8.3 <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

  8.4 <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

    8.5    <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

    8.6    <u>Controlling Effect</u>.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of <u>Tennessee</u> govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.]

    8.7    <u>Corporate Governance</u>.  As required by §1123(a)(6) of the Code, the Debtor does not intend to change its present corporate structure, stock class structure, management structure or equity ownership structure.

## ARTICLE IX
## DISCHARGE

    9.1    <u>Discharge</u>. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE X
## MODIFICATION OF PLAN

    10.1    Debtor may modify this Plan in accordance with Section 1127 of the Bankruptcy Code. After Confirmation, Debtor may, with the approval of the Court and so long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or any inconsistencies in the Plan, Disclosure Statement, or the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and Disclosure Statement.

## ARTICLE XI
## EFFECT OF CONFIRMATION, DISCHARGE, AND INJUNCTION

    11.1    <u>Vesting of Property.</u>  Except as otherwise provided in the Plan, Confirmation of the Plan shall vest all of the property of the Debtor into the Reorganized Debtor.

    11.2    <u>Property Free and Clear.</u>  Except as otherwise provided in the Plan, all property dealt with by the Plan shall continue to be collateral for each Secured Creditor's Allowed Secured Claim as of the Confirmation of the Plan.  The Plan shall evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan, if any.

    11.3    <u>Legal Binding Effect: Discharge of Claims.</u>  The provisions of this Plan shall: (i) bind all Claimants, whether or not they accept this Plan.  In addition, the distributions provided for under this Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against the Debtor or any of its assets or properties, including any Claim accruing after the Petition Date and prior to the Effective Date.

    11.4    <u>Effect on Third Parties.</u>  Except as otherwise expressly provided in this Plan, nothing contained in the Plan or in the documents to be executed in connection with the Plan shall affect any Creditors' rights as to any third party.

## ARTICLE XII

## RETENTION OF JURISDICTION, ETC.

12.1    <u>Jurisdiction Retention.</u> The Bankruptcy Court shall, after Confirmation, retain jurisdiction of this case to: determine the allowance of Claims against the Debtor pursuant to Section 502 of the Bankruptcy Code; determine any matters arising concerning the title to property of the Debtor, the sale thereof, or liens against the said property; determine the allowance of timely filed Claims, resulting from the rejection of Executory Contracts; determine any dispute as to the allowance of Claims; hear and determine any adversary proceedings or contested matters commenced by the Debtor; fix and determine professional fees and other costs of administration; enforce the provisions of the plan and resolve all other matters as may be set forth in the Order of Confirmation.

12.2    <u>Post-Confirmation Modification.</u> After the Final Decree is entered any creditor may move to re-open this case and request the Court to modify the confirmed Plan under 11 U.S.C. § 1127(e) or to enforce the provision for post-confirmation quarterly reports. U.S. Trustee fees shall be paid for any quarters that the case is reopened.

11.3    <u>Post-Confirmation Reports.</u> The Debtor shall furnish post-confirmation quarterly reports by the 15th of the month following the end of the quarter to the United States Trustee's office and to any creditors requesting same in writing from the Debtor's counsel. This obligation of the Debtor shall continue after the Final Decree is entered in this matter until all Plan payments have been completed.

12.4    <u>Plan Payments.</u> Payments under the Plan will begin on the 1st day of the month after the Effective Date and shall continue monthly by the 1st day of the month thereafter until all payments required to be made under the Plan are completed.

12.5    <u>Objection to Claims, etc.</u> The Court shall retain jurisdiction for purposes of granting a discharge to Debtor, determining any and all objections to the amount of claims, applications for compensation and expenses, to enforce the provisions of the Plan, to correct any defect, cure any omissions or reconcile any inconsistency in the Plan, and to determine such other matters as may be provided for in the Order of the Court confirming the Plan.

12.6    <u>Re-Opening Case.</u> The case may be re-opened by Debtor, without payment of the fee to re-open cases, for entry of a discharge order.

Respectfully submitted, by:

By: /s/ William Harry Fryar
William Harry Fryar
The Plan Proponent

By: /s/ David J. Fulton
David J. Fulton #006102
Attorney for the Plan Proponent